**CIVIL MINUTES – GENERAL**      **'O'**    **JS-6**

| Case No. | 2:17-CV-08907-CAS-AFMx | Date | November 19, 2019 |
|---|---|---|---|
| Title | IN RE 1918 DRACENA DR., LOS ANGELES, CA 90027-3107 V. NBS DEFAULT SERVICES, LLC | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Jonathan Deer | Gavin Green, AUSA |
| | Steven Morris |

**Proceedings:**      UNITED STATES' MOTION FOR SUMMARY JUDGMENT (Dkt. 14, filed October 7, 2019)

## I. INTRODUCTION

On August 28, 2017, NBS Default Services, LLC ("NBS") filed a petition and declaration regarding unresolved claims and deposit of undistributed surplus proceeds of trustee's sale ("Interpleader") in the Superior Court for the County of Los Angeles. Dkt. 1-1 at 1-4. NBS sought judicial assistance to distribute $211,123.25 in surplus proceeds from the foreclosure sale of a property located at 1918 Dracena Drive, Los Angeles, California, 90027-3107 (the "Property"). See id. Several entities, including the United States Internal Revenue Service and Platinum Loan Servicing, Inc. ("Platinum"), filed claims for the surplus funds. Dkt. 5-1 at 17-19, 61-81.

The United States removed this case to federal court under 28 U.S.C. § 1444 on December 11, 2017. Dkt. 1. Pursuant to the Court's instructions, dkt. 10, NBS deposited the surplus proceeds with the Clerk of the Court. On October 7, 2019, the United States filed a motion for summary judgment, dkt. 14 ("Mot."), and a statement of undisputed facts and conclusions of law, dkt. 14-1 ("GSUF"). Platinum filed an opposition on October 21, 2019, dkt. 17 ("Opp'n"), and a statement of genuine disputes, dkt. 17-1 ("PSGD"). The government filed a reply on November 4, 2019, dkt. 19, and a reply to Platinum's statement of genuine disputes, dkt. 20 ("GRSGD").

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:17-CV-08907-CAS-AFMx | Date | November 19, 2019 |
| Title | IN RE 1918 DRACENA DR., LOS ANGELES, CA 90027-3107 V. NBS DEFAULT SERVICES, LLC | | |

The Court held a hearing on November 18, 2019 and issued a tentative order granting the government's Motion.  Counsel submitted on the tentative ruling.  Having carefully considered the parties' arguments, the Court concludes as follows.

## II.   BACKROUND

Unless otherwise noted, the Court references only facts that are uncontroverted and as to which evidentiary objections have been overruled.

### A.   The Relevant Property Encumbrances

On January 22, 1998, a grant deed was recorded transferring title to the Property to Nshan and Ripsime Demirchyan, husband and wife as joint tenants.  GSUF ¶ 1; Dkt. 14-2 at 10-13.

On September 18, 2007, a deed of trust ("First Deed of Trust") was recorded on the Property securing a note in the amount of $489,500.00 from the Demirchyans.  GSUF ¶ 2; Dkt. 14-2 at 14-35.  The lender was World Savings Bank, FSB, and the trustee was Golden West Savings Association Service Co.  Dkt. 14-2 at 16-17.[1]

On November 21, 2007, a second deed of trust ("Second Deed of Trust") was recorded on the Property to secure a $135,000.00 note from the Demirchyans.  GSUF ¶ 3; Dkt. 14-2 at 36-43.  The lenders were a group of investors, including: (1) First Regional Bank Custodian FBO Richard E. Fine IRA Account #AFR0050 as to an undivided 22.222% interest; (2) Raymond Cesmat and Louanna Cesmat, Trustees of the Cesmat Living Trust dated June 30, 2005, as to an undivided 55.556% interest; and (3) First Regional Bank Custodian FBO David Mordecai IRA Account #AMD0400 as to an undivided 22.222% interest.  Dkt. 14-2 at 36-43.  The trustee of the instrument was New Haven Financial.  Id. at 38.[2]

---

[1]    The Parties allege that World Savings Bank was the trustee.  GSUF ¶ 2.  It is unclear whether World Savings Bank is related to or the successor-in-interest to Golden West Savings Association Service Co., the trustee listed on the First Deed of Trust.

[2]    Platinum is the successor-in-interest to New Haven Financial.  Dkt. 17-2, Declaration of Scot Fine at ¶ 1.  Platinum services private equity loans brokered by its sister company, Marquee Funding Group, Inc.  Id.  Platinum also serves as the agent for the

| | **CIVIL MINUTES – GENERAL** | | **'O'   JS-6** |
|---|---|---|---|
| Case No. | 2:17-CV-08907-CAS-AFMx | Date | November 19, 2019 |
| Title | IN RE 1918 DRACENA DR., LOS ANGELES, CA 90027-3107 V. NBS DEFAULT SERVICES, LLC | | |

On February 7, 2008, a notice of federal tax lien was recorded against the Demirchyans for delinquent federal income taxes. GSUF ¶ 4; Dkt. 14-2 at 44-46. The total unpaid balance owed to the government as of the date of the notice was $202,174.11. Dkt. 14-2 at 45. The government refiled its notice of federal tax lien on April 4, 2016. GSUF ¶ 25; Dkt. 14-2 at 67-69. The latest figures in the record show a balance due to the government of $327,672.34 as of November 8, 2017. GSUF ¶ 30.

## B.   Foreclosure of the Second Deed of Trust

On February 1, 2010, a notice of default related to the Second Deed of Trust was recorded after the Demirchyans fell behind on their loan payments. Dkt. 14-2 at 47-52. That notice was rescinded the following month. Id. at 55.

Three years later, on February 20, 2013, a notice of trustee's sale related to the Second Deed of Trust ("2013 Notice") was recorded listing the auction date as March 19, 2013. GSUF ¶ 5; Dkt. 14-2 at 57-61. According to the 2013 Notice, the amount due to the beneficiaries of the Second Deed of Trust was approximately $227,462.33 with costs. Dkt. 14-2 at 60. The 2013 Notice specified that potential buyers would be responsible for paying off all existing senior liens in order to receive clear title to the Property. Id. The auction date was later moved to April 23, 2013. GSUF ¶ 6.

On April 23, 2013, the beneficiaries of the Second Deed of Trust, represented by Platinum (referred to as New Haven Financial at the time), purchased the Property at public auction on a credit bid. Fine Decl. ¶ 7; Dkt. 14-2 at 62-66.[3] At the time, the amount of the debt and costs owed to the beneficiaries was $174,442.02. Dkt. 14-2 at 64. The Property had no equity and the balance of the first mortgage was more than the value of the Property. PSGD ¶ 3.

The IRS alleges that it did not receive a copy of the 2013 Notice. GSUF ¶ 8. Platinum contends that its representative in charge of conducting the sale ("Reliable/TD") sent a copy of the 2013 Notice via certified mail to the IRS at 300 North Los Angeles

---

investors making the loans, and sometimes takes title in its name on behalf of the investors. Id.

[3] Beneficiary David Mordecai IRA Account #AMD0400 took only an 11.111% interest from the sale. Dkt. 14-2 at 64. Polycomp Trust Company Custodian FBO Odelia Mordecai A/C Pam 00010 took the remaining 11.111% interest. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'   JS-6**

| Case No. | 2:17-CV-08907-CAS-AFMx | Date | November 19, 2019 |
| Title | IN RE 1918 DRACENA DR., LOS ANGELES, CA 90027-3107 V. NBS DEFAULT SERVICES, LLC |

Street, Stop 5021, Los Angeles, California 90012.  GSUF ¶ 10-11; PSGD ¶ 4.  Platinum does not have the certified mail sender's receipt for the copy allegedly mailed to the IRS. GSUF ¶ 13.

Platinum did not take possession of the Property after its purchase, because it had zero equity.  PSGD ¶ 10.  Instead, the Demirchyans remained in the Property for another two years until the foreclosure of the First Deed of Trust.  Id.  Platinum knew that the Property was still subject to the First Deed of Trust, which was already in default.  Fine Decl. ¶ 8.  Platinum expected that the beneficiaries of the First Deed of Trust would foreclose.  Id.

**C.      Foreclosure of the First Deed of Trust**

On May 31, 2017, the trustee of the First Deed of Trust sold the Property to FVC Properties, LLC for $851,000.00.  GSUF ¶ 26; Dkt. 14-2 at 70-74.  The amount owed to the beneficiaries at the time of the sale (with costs) was $639,726.96. Dkt. 14-2 at 72.  The foreclosure sale generated surplus proceeds of $211,123.25.  GSUF ¶ 27.

According to Platinum, neither it nor the investors it represents received notice of the foreclosure sale related to the First Deed of Trust. PSGD ¶ 12.  The trustee for the First Deed of Trust did notify both Platinum and the IRS of the surplus proceeds after the sale. PSGD ¶¶ 13, 16.

**III.    LEGAL STANDARD**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a disputed fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out "specific facts showing that there is a genuine issue for trial" in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); see also Fed. R. Civ. P. 56(c), (e).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'   JS-6**

| Case No. | 2:17-CV-08907-CAS-AFMx | Date | November 19, 2019 |
|---|---|---|---|
| Title | IN RE 1918 DRACENA DR., LOS ANGELES, CA 90027-3107 V. NBS DEFAULT SERVICES, LLC | | |

871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (alteration and citation omitted); see also Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV. DISCUSSION

The government moves for summary judgment on its claim for the surplus proceeds of the 2017 foreclosure of the First Deed of Trust. Mot. at 2.[4] It argues that the federal tax lien continued to attach to the Property after Platinum purchased it in 2013, because Platinum has not been able to provide the certified mail sender's receipt proving that the 2013 Notice was properly forwarded to the IRS. Id. at 16. Thus, the government alleges that it is entitled to the surplus proceeds of the 2017 foreclosure sale. Id.

Platinum advances two main arguments against the government's claim for the surplus funds. First, Platinum argues that the 2017 foreclosure sale is void, because it did not receive notice of the sale. Opp'n at 8. As the owner of the Property, Platinum alleges that it was entitled to such notice under California law. Id. For this reason, "the Court may not enforce the void sale by distributing the purported excess funds to the IRS where there is no sale in the first instance." Id. Second, Platinum contends that there is a triable issue of fact as to whether the 2013 foreclosure sale extinguished the government's tax lien. Id.

---

[4] Unless otherwise noted, all pinpoint citations are to the ECF-generated page numbers shown at the top of each document filed with the Court.

| | **CIVIL MINUTES – GENERAL** | | **'O'** **JS-6** |
|---|---|---|---|
| Case No. | 2:17-CV-08907-CAS-AFMx | Date | November 19, 2019 |
| Title | IN RE 1918 DRACENA DR., LOS ANGELES, CA 90027-3107 V. NBS DEFAULT SERVICES, LLC | | |

at 12. According to Platinum, it has presented enough evidence for a reasonable fact-finder to conclude that it sent a copy of the 2013 Notice to the IRS via certified mail. Id. at 13.

## A.    Validity of the 2017 Foreclosure Sale

"A nonjudicial foreclosure sale is accompanied by a common law presumption that it was conducted regularly and fairly." Miranda v. SCME Mortg. Bankers, Inc., No. 17-cv-03153-JAK-KS, 2017 WL 3131965, at *6 (C.D. Cal. July 24, 2017) (internal quotation marks and citation omitted). To challenge a nonjudicial foreclosure, three elements must be proven: (1) the trustee caused an illegal, fraudulent, or willfully oppressive sale of the property; (2) the aggrieved party suffered prejudice or harm; and (3) the aggrieved party tendered the amount of the secured debt or was excused from doing so. Id. at 5 (internal quotation marks and citation omitted). The aggrieved party has the burden to present "substantial evidence of prejudicial procedural irregularity" to overcome the presumption that the sale was lawful. Id. at 6 (citation omitted).

Here, Platinum ratified the 2017 foreclosure sale through its conduct over the last two years, including its filing of a claim for the surplus proceeds on October 4, 2017. GSUF ¶ 29; see Boyd v. Blankman, 29 Cal. 19, 35 (1865) ("The acceptance of the purchase money . . . would unquestionably amount to a ratification of the sale."). "[I]t is a general rule that by claiming, accepting, or acquiescing in the beneficial application of the surplus of the proceeds or the proceeds of a void, irregular, or defective execution sale, knowing of the condition rendering it so, a judgment debtor is estopped to challenge it upon that ground." H. D. Warren, Annotation, Estoppel of or Waiver by Parties or Participants Regarding Irregularities or Defects in Execution or Judicial Sale, 2 A.L.R.2d 6 (1948). As the government notes, nowhere in its 2017 claim for the surplus proceeds or in the Parties' 2019 Rule 26(f) Joint Report did Platinum raise any issues with the validity of the sale. See Dkt. 5-1 at 61-81; Dkt. 8. Indeed, instead of pleading a wrongful foreclosure claim against the trustee, Platinum stipulated to excuse the trustee from further participation in this case on April 24, 2019. See Dkt. 9.

| | CIVIL MINUTES – GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:17-CV-08907-CAS-AFMx | Date | November 19, 2019 |
| Title | IN RE 1918 DRACENA DR., LOS ANGELES, CA 90027-3107 V. NBS DEFAULT SERVICES, LLC | | |

In short, Platinum cannot now attack the validity of the 2017 foreclosure sale when it has been actively seeking to claim its surplus proceeds for the last two years. The Court now considers whether Platinum or the IRS is entitled to the surplus proceeds.

### B.    Notice of the 2013 Foreclosure Sale to the IRS

A lien in favor of the United States is not disturbed by a non-judicial foreclosure sale if: (1) the lien was filed more than 30 days before the sale and (2) the United States is not given notice of the sale by registered or certified mail or by personal service at least 25 days prior to the sale. 26 U.S.C. §§ 7425(b)(1), (c)(1). Accompanying regulations outline the required contents of the notice of sale. See 26 C.F.R. § 301.7425-3(d). The regulations also state that "[t]he provisions of section[] 7502 (relating to timely mailing treated as timely filing) . . . apply in the case of notices required to be made under this paragraph." 26 C.F.R. § 301.7425-3(a)(1).

Section 7502 provides that if a document is sent to the IRS by United States registered mail, "such registration shall be prima facie evidence that the . . . document was delivered to the agency." 26 U.S.C. § 7502(c)(1)(A). "The Secretary is authorized to provide by regulations the extent to which the provisions of paragraph (1) . . . shall apply to certified mail . . . ." 26 U.S.C. § 7502(c)(2). In 2011, Treasury Regulation § 301.7502-1(e) was amended to establish that:

> Other than direct proof of actual delivery, proof of proper use of registered or certified mail . . . are the exclusive means to establish prima facie evidence of delivery of a document to the agency . . . . No other evidence of a postmark or of mailing will be prima facie evidence of delivery or raise a presumption that the document was delivered."

Timely Mailing Treated as Timely Filing, 76 Fed. Reg. 52561-01, 52563 (Aug. 23, 2011) (codified at 26 C.F.R. pt. 301) (emphasis added).

In Baldwin v. United States, the Ninth Circuit affirmed the validity of this regulation. 921 F.3d 836, 844 (9th Cir. 2019). Specifically, the court considered whether 26 U.S.C. § 7502 could co-exist with the common law mailbox rule, which allows testimonial and

**CIVIL MINUTES – GENERAL**          **'O'    JS-6**

| | |
|---|---|
| Case No. | 2:17-CV-08907-CAS-AFMx          Date   November 19, 2019 |
| Title | IN RE 1918 DRACENA DR., LOS ANGELES, CA 90027-3107 V. NBS DEFAULT SERVICES, LLC |

circumstantial evidence to prove that a document was mailed. Id. at 840-41. The court held that section 7502 displaced the mailbox rule, noting that the regulation clearly provides the exclusive means to prove delivery. Id. at 841-42.

Here, it is undisputed that Platinum "does not have [the] certified mail sender's receipt for the notice of sale allegedly mailed to the Internal Revenue Service in 2013." GSUF ¶ 13. Instead, Platinum urges the Court to consider testimonial (i.e., the declarations of Scot Fine and Lynn Wolcott) and circumstantial evidence (i.e., an unsigned declaration of mailing and the IRS's mail logs) as proof that it mailed the 2013 Notice to the IRS in 2013. Platinum also argues that neither section 7502 nor Baldwin are applicable to this case, because the statute and its regulations only deal with proving the delivery date of a document rather than whether it was properly sent at all. See Opp'n at 9-11.

First, Platinum's attempt to distinguish section 7502 and Baldwin is unpersuasive. Although Platinum argues that application of the mailbox rule would avoid an unfair result here, the law clearly forbids it. In Baldwin, the plaintiffs also sought to rely on the testimony of two of their employees to prove that they mailed an amended tax return to the IRS according to law. Baldwin, 921 F.3d at 842. Like Platinum, they also argued that section 7502 was inapplicable because they were not seeking to prove the timely delivery of a document; rather, their intention was to prove that they actually mailed the document and that the IRS presumably received it. Id. at 844. The Ninth Circuit rejected their narrow interpretation, noting that "§ 7502 also addresses situations in which the IRS claims not to have received a tax document at all." Id. After holding that "recourse to the common-law mailbox rule [was] no longer available[,]" the court remanded the case with instructions to dismiss. Id. In reaching this conclusion, the court left no room to consider whether application of § 7502 would have unfair results for either party. See Whiteside v. United States, 833 F.2d 820, 822 (9th Cir. 1987) ("Though they be technical, . . . the [Treasury] regulations must be complied with.").

Second, section 7502 prohibits exactly the kind of evidentiary goose chase that Platinum urges the Court to undertake here. Were the Court to consider Platinum's evidence, it would have to rule on the government's evidentiary objections to Platinum's testimony and the unsigned declaration of mailing, see Mot. at 17, and speculate as to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'   JS-6

| Case No. | 2:17-CV-08907-CAS-AFMx | Date | November 19, 2019 |
| Title | IN RE 1918 DRACENA DR., LOS ANGELES, CA 90027-3107 V. NBS DEFAULT SERVICES, LLC | | |

whether the entries in the IRS mail log match the alleged mail from Platinum's representative.  See Nelson v. Pima Cmty. Coll., 83 F.3d 1075 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." (citation omitted)).  Yet, the Baldwin court was persuaded that "§ 7502 evinces a preference for an easily applied, objective standard—a preference incompatible with the common-law mailbox rule."  Id. at 841 (internal quotation marks and citation omitted).  Indeed, in amending Treasury Regulation § 301.7502-1(e), the IRS noted that "[a]bsent actual delivery, . . . first class mail without additional services provides nothing, such as certified or registered mail receipt, to establish proof of delivery."  76 Fed. Reg. 52561-01, 52562 (emphasis added).

Accordingly, the Court concludes that, because Platinum did not provide the certified mail sender's receipt in question, Platinum failed to raise a triable issue of fact as to whether it properly sent a copy of the 2013 Notice to the IRS.  For this reason, the 2013 non-judicial foreclosure sale did not extinguish the IRS lien pursuant to 26 U.S.C. §§ 7425(b)(1), (c)(1).[5]

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** the government's motion for summary judgment.  The Court instructs the Clerk of the Court to release the surplus proceeds deposited into the registry of the Court on May 1, 2019, along with all interest accrued, to the government by check made payable to the "United States Treasury."  The

---

[5]   The government also raises various issues related to the copy of the 2013 Notice that Platinum allegedly mailed to the IRS.  Dkt. 17-2 at 8-10.  While the government is correct that those defects exist, it would have been up to the IRS to object upon receipt of the deficient notice of sale.  See Whiteside, 833 F.2d at 822 ("[Once] the Whitesides provided the IRS notice that was timely but defective[] [t]his shifted the burden to the IRS to notify the Whitesides of the defect.").  In any event, because the Court is satisfied that Platinum did not raise a triable issue of fact as to whether it complied with its notice obligations to the IRS, the Court reserves judgment on the question of whether these defects would have also caused the survival of the government's tax lien.

| | CIVIL MINUTES – GENERAL | | 'O' | JS-6 |
|---|---|---|---|---|
| Case No. | 2:17-CV-08907-CAS-AFMx | Date | November 19, 2019 | |
| Title | IN RE 1918 DRACENA DR., LOS ANGELES, CA 90027-3107 V. NBS DEFAULT SERVICES, LLC | | | |

check shall be mailed to: U.S. Attorney's Office – Tax Division, Federal Building, Attn: AUSA Gavin Greene, 300 N. Los Angeles St., Room 7211, Los Angeles, CA 90012.

IT IS SO ORDERED.

| | 00 | : | 02 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

Cc:    Fiscal